# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Mark F. Richardson,<br>    Individually and on behalf of those<br>    similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>Flagstar Bancorp, Inc., and,<br><br>Flagstar Bank FSB, Inc.,<br><br>                    Defendants. | Civil Action No. _____<br><br>**Collective and Class Action Complaint**<br><br>**Jury Demand Endorsed Hereon** |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Mark F. Richardson ("Plaintiff"), individually and on behalf of others similarly situated, for his complaint against Flagstar Bancorp, Inc. ("Defendant Flagstar Bancorp") and Flagstar Bank FSB, Inc. ("Defendant FSB") (collectively "Defendants"), hereby states, upon information and belief, as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves the FLSA, a federal statute.

2. Plaintiff's collective claims for unpaid minimum wages and/or unpaid overtime are brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, the Ohio Constitution, Oh. Const. Art. II § 34a, and the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111").

3. Plaintiff brings the collective claims on his own behalf and on behalf of those similarly situated, and has given his written consent to bring such claims, which is filed along with the Complaint. (*Consent to be a Party Plaintiff*, attached hereto as **Exhibit A**).

4. Plaintiff brings individual claims for unpaid overtime under the O.R.C. Chapter 4111.

5. Plaintiff brings individual claims additional damages under O.R.C. Chapter 4111 and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15.

6. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy.

7. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, because Plaintiff entered into employment relationships with Defendants in the Southern District of Ohio, a substantial part of the events or omission giving rise to the claim occurred in the Southern District of Ohio, and Defendants have done substantial business in the Southern District of Ohio.

**II. PARTIES**

8. Plaintiff is an individual, United States citizen and a resident of Franklin County, Ohio. He was employed by Defendant from approximately April 10, 2017 through approximately May 3, 2018.

9. Defendant Flagstar Bancorp is a Michigan, for-profit, publicly traded corporation with its principle place of business as 5151 Corporate Drive, Troy, Michigan, 48098. Defendant Flagstar Bancorp can be served at through its statutory agent at CSC – Lawyers Incorporating Service, 601 Abbot Road, East Lansing, MI 48823.

10. Defendant FSB is a subsidiary of Flagstar Bancorp. Its corporate headquarters is also 5151 Corporate Drive, Troy, Michigan, 48098. Defendant FSB can be served at through its statutory agent at CSC Lawyers Incorporating Service, 601 Abbot Road, East Lansing, MI 48823.

### III. FACTS

11. Defendants were and have been "employers" as that term is defined by the FLSA and O.R.C. Chapter 4111.

12. At all times relevant to this action, Defendants have been engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendant constituted an enterprise engaged in commerce within the meaning of the FLSA.

13. Defendants' employees were engaged in interstate commerce and Defendants have annual gross volume sales and/or business in an amount not less than $500,000.00.

14. Defendants hold themselves out as offering full-service banking and lending, as having assets of $17.7 billion, as being the fifth largest bank mortgage originator nationally, as being the third largest savings bank in the country, as operating 99 branches in Michigan and eight branches in California. Defendants holds their mortgage division out as operating nationally through 92 retail locations, as having a wholesale network of more than 1,700 brokers, and as having correspondent lenders in all 50 states. Defendants hold themselves out as being a leading servicer and subservicer of mortgage loans—handling recordkeeping for $104 billion in home loans.[1]

15. Defendants table fund many, if not most, of their loans. They conduct most of their own underwriting and identify themselves as the "lender" on many of its documents, including closing documents.

---

[1] https://web.archive.org/web/20180625171602/https://www.flagstar.com/about-flagstar.html.

16. Defendants hold themselves out has having Loan Centers located in the states of Arizona, California, Colorado, Connecticut, Florida, Georgia, Idaho, Indiana, Kansa, Kentucky, Massachusetts, Maryland, Michigan, Minnesota, Missouri, Montana, North Carolina, New Jersey, Nevada, New York, Ohio, Rhode Island, Texas, Utah, Virginia and Wisconsin.[2]

17. During his employment with Defendant, Plaintiff worked as Senior Loan Officer at Defendants' Ohio Loan Center, located at 9101 Antares Ave Columbus, OH 43240 (Franklin County).

18. Upon information and belief, there were approximately one to two similarly situated loan officers at any location, including Ohio, in any workweek during the time relevant to the Complaint.

19. During relevant times, Defendants have jointly had operational control over significant aspects of the day-to-day functions of Plaintiff and those similarly situated.

20. During relevant times, Defendants have jointly had the authority to hire, fire and discipline employees, including Plaintiff and those similarly situated.

21. During relevant times, Defendants have jointly had the authority to set rates and methods of compensation of Plaintiff and those similarly situated.

22. During relevant times, Defendants have jointly had the authority to control the work schedules and employment conditions of Plaintiff and those similarly situated.

23. During relevant times, Defendants have jointly had ultimate authority and control of employment records.

---

[2] It was recently announced that Defendant Flagstar FSB will be purchasing 52 retail branches from Wells Fargo & Co. *See e.g.*, https://www.marketwatch.com/story/wells-fargo-to-sell-52-bank-branches-to-flagstar-bancorp-2018-06-05. Accordingly, Plaintiff reserves the right to amend this complaint to add additional locations and/or putative collective members, if necessary.

24. During relevant times, Defendants have mutually benefitted from the work performed by Plaintiff and those similarly situated.

25. During relevant times, Defendants have not acted entirely independently of each other and have not been completely disassociated with respect to Plaintiff and those similarly situated.

26. During relevant times, Defendants shared the services of Plaintiff and those similarly situated.

27. During relevant times, Defendants acted directly or indirectly in the interest of each other in relation to Plaintiff and those similarly situated.

28. During his employment with Defendants, Plaintiff worked as Sr. Loan Officer from approximately April 2017 to approximately October 2017, and as a Producing Sales Manager from approximately October 2017 to the end of his employment of approximately May 3, 2018.

29. Notwithstanding the change in job title, there was no change in Plaintiff's job duties, and the only change in compensation was an additional "override" amount.

30. Plaintiff and those similarly situated are or were non-exempt employees of Defendants as defined in the FLSA and O.R.C. Chapter 4111.

31. Throughout his employment, Plaintiff performed non-exempt job duties for Defendants.

32. The primary job duty of Plaintiff and those similarly situated was sales.

33. The primary duty of Plaintiff and those similarly situated was not management.

34. The primary duty of Plaintiff and those similarly situated did not involve performance of work directly related to the management or general business operations of the

Defendants or Defendants' customers; nor did their primary duty include the exercise of discretion and independent judgment with respect to matters of significance.

35. The job duties of Plaintiff and those similarly situated include: receiving and processing leads; contacting potential customers; communicating with potential customers generated by direct mail or other marketing activity; collecting required financial information from customers, including information about income, employment history, assets, investments, home ownership, debts, credit history, prior bankruptcies, judgments, and liens; running credit reports; entering collected information into Defendants' computer program that identifies which loan products may be offered to the customers based on the financial information provided; assessing the loan products identified by Defendants' computer program and discussing the with consumers the terms and conditions of particular loans; compiling customer documents for forwarding to an underwriter or loan processor; and processing documents for closing.

36. Plaintiff and those similarly situated spent the majority of their time working inside Defendants' Loan Centers or other retail locations.

37. Plaintiff and those similarly situated did not customarily and regularly perform their primary duties away from Defendants' places of business.

38. The compensation of Plaintiff and those similarly situated included a guaranteed draw for the first 90 days, and draw against commission thereafter.

39. Except for the guaranteed draw, the compensation of Plaintiff and those similarly situated did not include a weekly salary.

40. Defendants had a company-wide policy and practice of not accurately recording all hours worked by Plaintiff and those similarly situated.

41. Defendants had a company-wide policy and practice of automatically deducting 30 minutes per day from each paycheck for lunch breaks, even though Plaintiff and those similarly situated regularly worked through such breaks or took no break at all.

42. Defendants had a company-wide policy and practice of suffering and permitting Plaintiff and those similarly situated to work more than 40 hours in a workweek, but not paying Plaintiff and those similarly situated compensation of at least one and one-half times their regular rates for hours worked in excess of 40 in a workweek.

43. For example, for the bi-weekly pay period September 9, 2017 through September 22, 2017, Plaintiff's pay stubs show approximately 111.73 hours worked over two weeks, but no overtime paid. Plaintiff's hours actually worked for this period is approximately 107 hours.

44. For the bi-weekly pay period January 13, 2018 through January 26, 2018, Plaintiff's pay stubs show approximately 87.48 hours worked over two weeks, but only $.18 cents was paid as overtime. Plaintiff's hours actually worked for this pay period is approximately 96.17 hours.

45. Plaintiff's hours actually worked are consistently greater than 40 per workweek.

46. Defendants had a company-wide policy and practice of classifying Plaintiff and those similarly situated as exempt from the FLSA and/or Ohio wage laws.

47. In workweeks during times relevant to this Complaint, the Regular Rate of Plaintiff did not equal at least one and one-half times the Ohio or the federal minimum wage; whether calculated by the hours paid on Plaintiff's pay stubs or whether calculated by the hours actually worked.

48. For example, the for the bi-weekly pay period of July 15, 2017 through July 28, 2017, the Regular Rate for hours recorded on Plaintiff's paystub was approximately $7.74; and

for hours actually worked by Plaintiff was $6.00. The for the subsequent bi-weekly pay period of July 29, 2017 through August 11, 2017, the Regular Rate for hours recorded on Plaintiff's paystub was approximately $7.74; and for hours actually worked by Plaintiff was $5.74.[3]

49. The foregoing also establishes minimum wage violations under the FLSA and Ohio law.

50. Out of approximately 28 pay periods for which Plaintiff has documents within his possession, approximately 15 have Regular Rates less than one and one-half times the Ohio or the federal minimum; whether calculated by the hours paid on Plaintiff's pay stubs or whether calculated by the hours actually worked.

51. Approximately 11 to 15 pay periods document Ohio minimum wage violations; whether calculated by the hours paid on Plaintiff's pay stubs or whether calculated by the hours actually worked.

52. Approximately 11 pay periods document federal minimum wage violations when calculated by the hours actually worked by Plaintiff.

53. Upon information and belief, similarly situated individuals in Ohio and across the nation were also paid at Regular Rates below the lawful minimum wage, and/or at Regular Rates less than one and on-half times the Ohio and/or federal minimum wage.

54. Accordingly, Plaintiff and those similarly situated were not exempt under 29 U.S.C. § 207(i) because of two independent reasons: (a) Defendants' Loan Centers are part of Defendants' banking and financial business, and are not retail service establishments; and (b) because their Regular Rates were less than one and one-half the Ohio and/or federal minimum wage during workweeks.

---

[3] Plaintiff reserves the right to update his preliminary calculations once discovery is completed.

55. During relevant times, Defendants suffered and permitted Plaintiff and those similarly situated to work more than forty (40) hours per workweek, while not compensating them overtime for hours worked over forty (40) at a rate of at least one and one-half times their regular rates.

56. Plaintiff, on multiple occasions, complained to Defendants via Plaintiff's supervisors/managers concerning the underpayment of wages; but no resolution or remedy was provided by Defendants.

57. During relevant times, Defendants had knowledge of and acted willfully in regard to their conduct described herein.

58. While Plaintiff makes a good-faith effort to estimate the approximate damages, Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages, or they failed to keep lawfully required documents, and Plaintiff expressly reserves the right to more precisely calculate damages once discovery is completed.

### IV. COLLECTIVE ALLEGATIONS

59. Plaintiff brings his FLSA claims for federal minimum wage and overtime violations pursuant to 29 U.S.C. §216(b) as a representative action on behalf of himself and all other similarly situated individuals of the opt-in collective, consisting of:

> **All current and former loan officers, mortgage loan representative, mortgage loan consultant, mortgage loan originator and any other employees with different titles but similar duties of Defendants from three years preceding the filing date of this Complaint through final disposition of this matter (the "216(b) Collective" or the "216(b) Collective Members").**

60. The FLSA collective claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) as to claims for unpaid minimum wages and overtime compensation in violation of the FLSA, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous putative 216(b) Collective Members have been denied proper minimum wages and overtime compensation due to Defendants' company-wide payroll policies and practices described herein. Plaintiff is representative of those other similarly situated employees and is acting on behalf of their interests as well as his own in bringing this action.

61. Plaintiff brings claims for relief due the Defendants' intentional violations of Ohio law and the Ohio Constitution's minimum wage requirements, as an Ohio collective action pursuant to O.R.C. § 4111.14(K). The Ohio Collective is defined as follows:

> **All current and former Ohio loan officers, mortgage loan representative, mortgage loan consultant, mortgage loan originator and any other employees with different titles but similar duties of Defendants from three years preceding the filing date of this Complaint through final disposition of this matter (the "4111.14(K) Collective" or the "4111.14(K) Collective Members").**

62. The 4111.14(K) collective claim is brought as an "opt-in" collective action pursuant to ORC 4111.14(K) as to claims for unpaid minimum wages in violation of Ohio law, liquidated damages, attorneys' fees and costs under Ohio law. In addition to Plaintiff, numerous putative 4111.14(K) Collective Members have been denied proper minimum wages due to Defendants' company-wide payroll policies and practices described herein. Plaintiff is representative of those other similarly situated employees and is acting on behalf of their interests as well as his own in bringing this action.

63. The 216(b) Collective Members and the 4111.14(K) Collective Members are not exempt from the protections of the FLSA or Ohio law.

64. The identities of the putative 216(b) Collective Members and putative 4111.14(K) Collective Members are known to Defendants and are readily identifiable through Defendants' payroll records. These individuals may be readily notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid minimum wages and overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Minimum Wage and Overtime Violations of the FLSA
### (Federal Collective Action)

65. All of the preceding paragraphs are realleged as if fully rewritten herein.

66. This claim is brought as part of a collective action by the Plaintiff on behalf of himself and the 216(b) Collective.

67. During the three years preceding the filing of this Complaint, Plaintiff and the 216(b) Collective Members were each jointly employed by Defendants as loan officers, mortgage loan representative, mortgage loan consultant, mortgage loan originator or as employees with different titles but similar duties.

68. Plaintiff and those similarly situated were required by Defendants to work, and regularly did work, over forty (40) hours in a work week.

69. During all times material to this complaint, Defendants have been employers covered by the minimum wage and overtime requirements set forth in the FLSA.

70. During all times material to this complaint, Plaintiff and the 216(b) Collective Members were not exempt from receiving FLSA minimum wages or overtime compensation.

71. During all times relevant to this complaint, Defendants did not compensate Plaintiff or the 216(b) Collective Members a salary of at least $455 per week.

72. The Plaintiff and the 216(b) Collective Members were paid commission against draw after their preliminary period of employment.

73. Defendants jointly violated the FLSA with respect to Plaintiff and the 216(b) Collective by failing to compensate them at the federal minimum wage of $7.25 per hour in certain workweeks during times relevant to this complaint.

74. Defendants jointly violated the FLSA with respect to Plaintiff and the 216(b) Collective by failing to compensate them at time and one-half times their regular rates for all hours worked over forty (40) hours in workweeks during times relevant to this complaint.

75. Defendants jointly violated the FLSA with respect to Plaintiff and the 216(b) Collective by failing to keep accurate records of all hours worked.

76. Defendants' policy and practice, described herein, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

77. The exact total amount of compensation, including minimum wages and/or overtime compensation, that Defendants failed to pay the Plaintiff and the 216(b) Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants or were not kept by Defendants.

78. As a direct and proximate result of Defendants' conduct, Plaintiff and the 216(b) Collective Members have suffered and continue to suffer damages. Plaintiff seeks unpaid minimum wages and overtime, liquidated damages, interest, attorneys' fees and all other remedies available, on behalf of himself and the 216(b) Collective Members.

**SECOND CLAIM FOR RELIEF**
**Ohio Minimum Wage Violations**

**(Ohio Collective Action)**

79. All of the preceding paragraphs are realleged as if fully rewritten herein.

80. This claim is brought under Ohio law, which requires that covered employees be compensated for every hour worked in a workweek. *See* O.R.C. §§ 4111 *et seq.; see also* 29 U.S.C. § 206(b).

81. During all times material to this complaint, Plaintiff and the 4111.14(K) Collective Members were covered employees entitled to the protections of Ohio law.

82. During all times material to this complaint, Defendants were entities covered by the Ohio Constitution Art. II, § 34; and Plaintiff and the 4111.14(K) Collective Members were jointly employed by Defendants within the meaning of the Ohio law.

83. During all times material to this complaint, Defendants were covered employers required to comply with the mandates of Ohio law.

84. Plaintiff and the 4111.14(K) Collective Members were not exempt from the wage and hour protections of Ohio law.

85. During all times relevant to this complaint, Defendants did not to pay Plaintiff or the 4111.14(K) Collective Members a salary of at least $455 per week.

86. During the three years preceding the filing of this Complaint, Plaintiff and the 4111.14(K) Collective Members were jointly employed by Defendants as loan officers, mortgage loan representative, mortgage loan consultant, mortgage loan originator and any other employees with different titles but similar duties.

87. Plaintiff and the 4111.14(K) Collective Members were required by Defendants to work, and regularly did work, over forty (40) hours in a work week.

88. Defendants failed to pay Plaintiff and the 4111.14(K) Collective Members at least the Ohio minimum wage per hour for all hours worked in certain workweeks during the period relevant to this complaint.[4]

89. Defendants' policy and practice, described herein, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

90. Because Defendants violated the Ohio's minimum wage requirements a three (3) year statute of limitations applies to such violations, pursuant to O.R.C. §4111.14(K).

91. The exact amount of minimum wages that Defendants failed to pay Plaintiff and the 4111.14(K) Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants or were not kept by Defendants.

92. For Defendant' violations of Ohio law, by which the Plaintiff and the 4111.14(K) Collective Members have suffered and continue to suffer damages, the Plaintiff seeks unpaid minimum wages, liquidated damages, interest, attorneys' fees and all other remedies available, on behalf of himself and the 4111.14(K) Collective Members.

### THIRD CLAIM FOR RELIEF
**Individual Claim for Ohio Overtime Violations**

93. All of the preceding paragraphs are realleged as if fully rewritten herein.

94. Plaintiff was jointly employed by Defendants.

95. Defendants are employers covered by the overtime requirements set forth under Ohio law.

96. Ohio law requires that employees receive overtime compensation "not less than one and one-half times" (1.5) the employee's regular rate of pay for all hours worked over forty

---

[4] The applicable hourly minimum wages in Ohio are: $8.10 (2015); $8.10 (2016); $8.15 (2017) and $8.30 (2018).

(40) in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

97. During all times material to this complaint, Plaintiff was a covered employee entitled to the overtime protections of Ohio law.

98. As an employee for Defendants, Plaintiff worked in excess of the maximum weekly hours permitted under O.R.C. §4111.03, but was not paid overtime wages for the time spent working in excess of 40 hour in a workweek.

99. Defendants failed to pay Plaintiff overtime compensation at time and a half (1.5) of his regular rate of pay for hours in a work week in excess of forty (40).

100. Pursuant to the Ohio Revised Code, Plaintiff is entitled to unpaid overtime wages dating back at least two years and as applicable.

101. The exact amount of unpaid overtime compensation that Defendants failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants or were not kept by Defendants.

102. The Ohio Revised Code requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff is entitled to review his records of hours worked to determine the exact amount of overtime wages owed by Defendants. Absent Defendants keeping these records as required by law, Plaintiff is entitled to submit his information about the number of hours worked.

103. Pursuant to the Ohio Revised Code, Plaintiff is entitled to attorneys' fees and costs incurred.

**FOURTH CLAIM FOR RELIEF**
**Individual Ohio Claim for Violations of the OPPA**

104. All of the preceding paragraphs are realleged as if fully rewritten herein.

105. During relevant times, Defendants were covered by the OPPA and Plaintiff was jointly employed by Defendants within the meaning of the OPPA.

106. The OPPA requires Defendants to pay Plaintiff all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

107. During relevant times, Plaintiff was not paid all wages, including all minimum wages earned and/or overtime wages earned at one and one-half times his regular rate within thirty (30) days of performing the work. *See* O.R.C. § 4113.15(B).

108. Plaintiff's unpaid wages remain unpaid for more than thirty (30) days beyond his regularly scheduled payday.

109. In violating the OPPA, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against Defendants, jointly and individually, for an Order:

A. Certifying the proposed 216(b) collective action under the FLSA;

B. Directing prompt issuance of notice pursuant to the 216(b) Collective Members apprising them of the pendency of this action, and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

C.	Directing Defendants, at their own expense, to investigate and account for the number of hours actually worked by Plaintiff and the putative collective members per week, and if Defendants failed to keep accurate records in accordance with Ohio law and/or the FLSA, Plaintiff and the 216(b) Collective Members are entitled to prove their hours worked with reasonable estimates;

D.	Awarding to the Plaintiff and the 216(b) Collective Members unpaid compensation, including minimum and/or overtime wages as to be determined at trial, together with any liquidated damages allowed by the FLSA;

E.	Awarding to the Plaintiff and the 4111.14(K) Collective Members unpaid minimum wages wages as to be determined at trial, together with any liquidated damages allowed by Ohio law;

F.	Awarding to Plaintiff unpaid overtime wages and OPPA damages as to be determined at trial, together with any liquidated damages allowed by Ohio law;

G.	Awarding Plaintiff, the 216(b) Collective Members and the 4111.14(K) Collective Members costs and reasonable allowances for fees;

H.	Awarding Plaintiff, the 216(b) Collective Members and the 4111.14(K) Collective Members such other and further relief as the Court deems just and proper;

I.	Issuing an injunction prohibiting Defendants from engaging in present, ongoing and future violations of the FLSA and Ohio law;

J.	Granting the Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

K.      Rendering a judgment against Defendants for all damages, relief, or any other recovery whatsoever.

Date: <u>September 27, 2018</u>                                  Respectfully submitted,

*s/Robert E. DeRose*
Robert E. DeRose (0055214)
Jessica R. Doogan (0092105)
**BARKAN MEIZLISH HANDELMAN GOODIN DEROSE WENTZ, LLP**
250 E. Broad St., 10th Floor
Columbus, Ohio 43215
Telephone: (614) 221-4221
Fax: (614) 744-2300
Email:  bderose@barkanmeizlish.com
            jdoogan@barkanmeizlish.com
*Attorneys for Plaintiff and those similarly situated*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2018, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Ohio using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/Robert E. DeRose*
Robert E. DeRose